UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSERVATION CONGRESS, | No. 2:12-cv-02800-TLN-CKD |
| Plaintiff, | |
| v. | **ORDER** |
| UNITED STATES FOREST SERVICE and UNITED STATES FISH AND WILDLIFE SERVICE, | |
| Defendants, | |
| and | |
| FRANKLIN LOGGING, INC., and SCOTT TIMBER CO., | |
| Defendant Intervenors. | |

The matter is before the Court pursuant to Plaintiff Conservation Congress's ("Plaintiff") motion for a preliminary injunction pending appeal, under Fed. R. App. Proc. 8(a)(1). (ECF No. 97.) Defendants U.S. Forest Service ("Forest Service") and U.S. Fish and Wildlife Service ("FWS") (collectively "Defendants"), and Defendant Intervenors Franklin Logging, Inc. and Scott Timber, Co. ("Defendant Intervenors") oppose the motion. (ECF No. 102.) For the reasons stated below, Plaintiff's motion is DENIED.

1

**I.     Background**

The subject of this suit is the Algoma Vegetation Management Project (the "Project"), a timber project occurring within the Shasta-Trinity National Forest. As stated in the 2013 Biological Opinion:

> Primary objectives of the Algoma Project are to reduce the likelihood of large-scale disturbance and to protect and enhance conditions of late successional forest ecosystems. Dense conditions of second-growth forest stands within the portions of the 44,377 acre action area are increasing the risk of widespread tree mortality and retarding the development of late-successional forest characteristics. Additionally, the existing fuel profile places stands at risk to high-severity wildfire, which can result in reduction of high-quality spotted owl habitat.  The Project proposes a combination of thinning, sanitation treatments, and fuels reduction activities on 4,666 acres within the Algoma Late-successional Reserve (LSR) to reduce the risk of habitat loss and to enhance conditions that are resilient to wildfire and other disturbances.

(AAR 22917–18.)[1]

Plaintiff filed the original complaint on November 15, 2012, seeking to enjoin the Project on a number of grounds, including its potential adverse effects to Northern Spotted Owl ("NSO") habitat within the Project area. (ECF No. 1.) Plaintiff filed an amended complaint on September 25, 2013. (ECF No. 33.) All parties moved for summary judgment. (ECF Nos. 52, 62, 68.) On May 19, 2014, the Court granted Defendants' and Defendant Intervenors' summary judgment motions and denied Plaintiff's summary judgment motion. (ECF No. 90.)

On June 11, 2014, Plaintiff filed a notice of appeal with this Court. (ECF No. 93.) On June 27, 2014, Plaintiff filed the instant motion to enjoin the Project from proceeding, pending appeal. (ECF No. 97.) Defendants and Defendant Intervenors filed an opposition and Plaintiff filed a reply. (ECF Nos. 102, 103.)

**II.    Analysis**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [p]laintiff is entitled to such relief." *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 22 (2008). For the injunction to issue, the plaintiff must demonstrate

---

[1] For additional background, see the Court's prior order granting summary judgment in favor of Defendants and Defendant Intervenors. (ECF No. 90.)

2

1  "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the
2  absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction
3  is in the public interest." *Id.* at 20.  In cases where there are "serious questions going to the
4  merits," a preliminary injunction may still issue if the "balance of hardships tips *sharply* in the
5  plaintiff's favor," provided that the remaining factors are satisfied.  *Shell Offshore, Inc. v.*
6  *Greenpeace*, *Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013).  Where there is a likelihood of harm to an
7  endangered or threatened species under the ESA, "the balance of hardships always tips sharply in
8  favor of the endangered or threatened species."  *Wash. Toxics Coalition v. EPA*, 413 F.3d 1024,
9  1035 (9th Cir. 2005).
10        Plaintiff's arguments in support of injunction parallel the arguments made in support of
11 their summary judgment motion.  The Court has ruled on these arguments, and therefore
12 minimally revisits them within the context of a preliminary injunction.
13        A.   <u>Likelihood of Success on the Merits</u>
14        For Plaintiff to succeed on appeal, Plaintiff must demonstrate that Defendants' review and
15 approval of the project was arbitrary, capricious, unlawful, or an abuse of discretion, as set forth
16 in the Administrative Procedure Act.  5 U.S.C. § 706(2)(A)–(D).  This Court previously found
17 that Defendants' review and approval of the Project warranted denying Plaintiff's summary
18 judgment motion.  (*See* ECF No. 90.)  For the same reasons, the Court finds that Plaintiff has not
19 raised serious questions going to the merits and is not likely to succeed on appeal.
20        B.   <u>Irreparable Harm</u>
21        Plaintiff makes four arguments in support of irreparable harm: 1) old-growth trees will be
22 irreversibly lost; 2) Plaintiff's members and supporters will not be able to enjoy the area in an
23 undisturbed state; 3) the Project violates NEPA, and early compliance with NEPA is a requisite to
24 preventing long-term harm; and 4) the NSO will suffer irreparable harm.
25        With respect to the logging of old-growth trees, Plaintiff directs the Court again to the
26 exhibits attached to its summary judgment motion: the declaration of Monica Bond (ECF No. 51-
27 2) and the declaration of Denise Boggs (ECF No. 51-1).  These declarations make personal
28

observations of Forest Service management activities in the Project area, and the declaration of Monica Bond contains photographs purporting to show trees marked for logging.  As the Court has already ruled, it finds no reason to depart from prior rulings in this District that "[e]ven if … the trees in the photographs appear to be large and therefore also appear to be old, this evidence does not call into question the complex and technical analyses judgments of the Forest Service and the FWS in their assessment of the characteristics of the habitat affected … " *Conservation Cong. v. U.S. Forest Service*, 2012 WL 2339765, at *9 (E.D. Cal June 19, 2012) *aff'd*. 720 F.3d 1048 (9th Cir. 2013).[2]  The 2013 Biological Assessment ("BA") provides that a main purpose of the Project is to accelerate the development of late-successional and old-growth habitat characteristics.  (AAR 23539.)  The comments section to the EIS evinces the intent to retain old-growth trees.  (AAR 818.)  The EIS advises managers of late-successional forest systems to move away from diameter limits as a cut-off for selecting trees for logging, and to instead focus on old-growth trees.  (AAR 267.)  Plaintiff does not support the claim that the logging of old-growth trees, if any is to occur, constitutes irreparable harm so as to warrant injunction.

With respect to Plaintiff's second argument – its members' and supporters' enjoyment of the Algoma Project area – Plaintiff analogizes the instant case to the timber project in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Aside from this reference, Plaintiff does not detail how its members' and supporters' enjoyment of the Project area is analogous to that in *Alliance*.[3]  The objective enumerated in the consultation documents include:

- "Thinning prescriptions will emphasize leaving the healthiest dominant and co-dominant trees, old growth trees, and large trees significantly taller than the surrounding general crown canopy.  Trees with cavities or broken tops, leaning boles, decadence, and/or damage will also be retained in various amounts over the project area." (AR 820.)

---

[2] Defendants further respond that declarant's photographs were taken outside of the Project area, and therefore are irrelevant.  Plaintiff does not respond to this argument.

[3] Among the differences between the instant case and *Alliance*, in *Alliance* the Forest Service did not prepare an EIS and also made an Emergency Situation Determination (ESD), which expedited the project's commencement so as to prevent substantial economic loss to the federal government.  *Alliance*, 632 F.3d at 1130.  Those concerns are not present in this case.

4

- The Project was developed for the "purpose and need of reducing risk of large-scale habitat loss while promoting and/or accelerating development of late-successional and old-growth habitat characteristics in the project area." (AR 202.)
- "[T]he existing fuel profile places stands at risk to high-severity wildfire, which can result in reduction of high-quality spotted owl habitat. The Project [intends to] … reduce the risk of habitat loss and to enhance conditions that are resilient to wildfire and other disturbances." (AAR 22917–18.)

The Court does not find that irreparable harm, in the absence of an injunction, will occur to Plaintiff's members' and supporters' enjoyment of the Project area.

With respect to Plaintiff's third argument – that Defendants' approval of the Project violates NEPA – this Court has already ruled that it does not, and declines to revisit those arguments. (*See* ECF No. 90.)

With respect to Plaintiff's fourth argument regarding irreparable harm to the NSO, the Court has already ruled on these arguments. The Court is aware of the precarious situation of the population numbers and habitat of the NSO, as detailed in numerous documents within the administrative record.[4] Plaintiff argues that thinning treatments, because they will open up the canopy, will cause an increase in solar radiation and thus increase fire risk. Plaintiff argues that these treatments will remove protective cover, and thus will render the NSO more vulnerable to predation. Plaintiff makes the argument that it would be better for unchecked wildfire to occur in the Algoma area, rather than a managed fire, because it is possible for the NSO to thrive in burned environments. (ECF No. 97 at 12, 15.)

Defendants emphasize that the Project is intended to benefit the NSO in the long term. (ECF No. 102 at 8–11.) Defendants surveyed the area for nests and clusters of detections (i.e. "activity centers"), determined that there were four known activity centers within the Project area, and detailed the Project's impact on NSO habitat within the home range (1.3 mile radius

---

[4] *See, e.g.* "Executive Summary," *The Revised Recovery Plan for the Northern Spotted Owl*, appr. by FWS on June 28, 2011.
http://www.fws.gov/arcata/es/birds/nso/documents/USFWS2011RevisedRecoveryPlanNorthernSpottedOwl.pdf.
Accessed Oct. 5, 2014.

5

surrounding an activity center) and core (0.5 mile radius surrounding an activity center) of each. (AAR 22931–34.)  Defendant FWS concluded: "The Algoma Vegetation Management Project is designed to avoid and minimize negative impacts to occupied spotted owl home ranges, and unlikely to adversely affect NSO…." (AAR 22934.)  Defendants assessed the impact on nesting/roosting, foraging, and dispersal habitat of NSO habitat within the Project area and determined:

- "The Algoma Project will not affect nesting/roosting habitat, [and] therefore there will be no cumulative effects to nesting/roosting habitat from the Algoma Project." (AAR 900.)
- "Foraging habitat has been or will be degraded on or about 21.5% of the Action Area …. This foraging habitat is expected to remain fully functional as foraging habitat post-treatment and is expected to recover pre-harvest canopy levels in about 20 to 25 years." (AAR 900.)
- "While treatments within dispersal habitat make [up] roughly half of the Algoma project, the majority of treatments are not expected to significantly reduce the function of dispersal habitat or habitat connectivity within the project area."[5] (AAR 22930.)

The Court does not find that irreparable harm to the NSO will result in the absence of an injunction.  The parties are directed to the Court's previous order (ECF No. 90) for a more expansive discussion of these issues.

### C. Balance of the Equities and Public Policy

The "balance of equities" refers to the relative burdens or hardships to parties, while the public interest inquiry primarily addresses impact on non-parties rather than parties. *Winter*, 555 U.S. at 26; *Bernhardt v. L.A.* Cnty, 339 F.3d 920, 931 (9th Cir. 2003).  The equities to be balanced include: the commercial benefit to Defendants of undertaking the Project; the management goals of the Forest Service and the FWS; and harm to Plaintiff and its members. Public policy factors include the long-term viability of NSO habitat and its population; the

---

[5] See the cumulative effects analysis in the EIS, Appendix N, AAR 895.

preservation of late-successional forest in the Algoma area; and other management goals of the Forest Service and the FWS. The Court finds that a balance of the equities and the interests of public policy do not warrant issuance of an injunction. For further factual specifics, refer to the Court's prior order (ECF No. 90).

**III.     Conclusion**

Plaintiff's motion for an injunction pending appeal (ECF No. 97) is DENIED.

Dated:  November 5, 2014

Troy L. Nunley
United States District Judge